Peelle, J.,
delivered the opinion of the court:
December 11,1893, the claimant entered into, the contract set out in the findings, whereby he agreed that for the consid *520 eration of $29,490 be would furnish all the labor and materials and perform all tbe work required for the erection and completion of the extension to the custom-house and post-office building at New Haven, Conn., including changes in the present building as in said contract provided, which work was to be completed within seven months from said date.
During the progress of the work sundry supplemental contracts were entered into for certain extra work aggregating $1,950, which work was performed by the claimant and for which, together with all other work required by the terms of said contracts, he has been paid except as to the sum of $157.25, which was withheld from him as damages sustained on the theory that part of the time of the delay in completing said work was due to the fault of the claimant.
In addition to the extra work for which the claimant has been paid, he was required by the local agent, as set forth in the findings, to perform certain additional work, not provided for by the terms of the contract, for the payment of which he seeks a recovery on quantum meruit.
The claimant, without any fault on his part, was delayed by the acts of the defendants in the completion of said work until June 29, 1895, or eleven months and eighteen days beyond the time of the contract period, of which one month and eighteen days were necessarily required in the performance of the extra work aforesaid. For this delay he seeks to recover damages.
The defense in respect of the $157.25, which was withheld under the forfeiture clause of the contract as the amount of damages sustained, on the theory that a part of the delay was the fault of the claimant, is met by the findings of fact in the claimant’s favor and need not be further considered.
In the advertisement for proposals general instructions were given to bidders, among which, under the head of “measurements,” was the following:
“ The successful bidder, at the proper time, to be determined by him, must make all measurements necessary for the proper-prosecution of the work called for by the drawings and specifications; and, during the prosecution of the work, he must make all necessary remeasurements to prevent misfittings in said work; and he will be responsible therefor.”
That paragraph enjoined upon the successful bidder the duty *521 and responsibility not only of making “ all measurements necessary for the proper prosecution of the work called for by the drawings and specifications,” but also to make, during the progress of the work, “ all necessary remeasurements to prevent inisfittings in said work.”
The advertisement and general instructions forming a part thereof were incorporated into the contract, and it was therefore clearly the claimant’s duty, dictated by common prudence as well, to make or cause to be made for his own guidance, in the proper prosecution of the work, the necessary measurements and remeasurements “ called for by the drawings and specifications;” and if the duty and responsibility thus devolved upon him were neglected, by reason .of which he suffered loss, the defendants can not, either in law or in equity, be held liable therefor.
In other words, if in the prosecution of the work the claimant, in making measurements, relied upon one set of drawings alone and was thereby misled, to his injury, the fault was his own, as by the terms of his contract the necessary measurements were based on drawings and specifications; and there is no controversy but that by comparing the drawings or. the drawings with the specifications the proper basis for making the necessary measurements could have been readily ascertained ; but, if not, it was clearly the duty of the claimant, before proceeding further in that respect, to so inform the defendants, to the end that the proper basis might be furnished him.
In the Simpson Case (310. Cls. ft., 217) a contract was entered into to build a dry dock upon an available site to be provided by the Government'. Before entering into the contract the Government had caused soundings or borings to be made by its engineer officers which disclosed no special difficulty. The contractors entered into the contract without making any examination as to the character of the underlying soil. During the progress of excavation a stratum of quicksand was struck, which greatly increased the cost of the work, and the claimants sought to recover damages therefor on the ground that the Government, by agreeing to provide an available site, had thereby guaranteed the character of the underlying soil as indicated by the borings so made, and that in making.their bid and contract they had relied thereon, but the ruling of the *522 court was adverse to their contention, and on appeal (172 U. S., 372) the decision was affirmed, the court, among other things, saying:
“ The fact that the bidders knew that a test of the soil in the yard had been made and drew the contract providing that the dock should be located on a site to be designated by the United States without any express stipulation that there was a warranty in their favor that the ground selected should be of a defined character, precludes the conception that the terms of the contract imposed such obligation on the Government in the absence of a full and clear expression to that effect, or at least an unavoidable implication.”
A similar question to the one under consideration was recently passed upon in the case of Burgywn (ante, p. 348). Iu that case the specifications under the head of “ General instruction for bidders” provided:
“ It is understood and agreed that the quantities given are approximate only, and it must be understood that no claim shall be made against the United States on account of any excess or deficiency, absolute or relative, in the same. Bidders are expected to examine the drawings and are invited to make the estimate of quantities for themselves.”
Still another specification under the head of “Details of the work ” correctly gave the basis or area within which the dredging was to be done, but in making computation therefrom the engineer officer stated the quantities of material to be excavated largely in excess of the true amount. The claimant sought a recovery on the theory that in making his bid he had relied upon the specifications, and that in respect of the numerical quantities of material stated they were erroneous, “ by reason of which to entitle the claimant to the compensation provided for in the contract, it became necessary for him to move his dredging machines over more extensive areas than those stated in the specifications, thereby increasing the cost of the work to his damage.”
But the ruling was adverse to the claimant, the court saying:
“All the factors for the computation were c'orrectly given and were open to. bidders, and they were expected and invited to make computations for themselves.
“ They were by the terms of the specifications cautioned to satisfy themselves of the character of the material and of the conditions of the work.’
“To uphold the claimant in his contention in the face of the *523 specifications inviting bidders ‘to make tbe estimate of quantities for themselves,’ some of whom did so and framed their bids accordingly, would be giving the claimant an undue advantage over his competitors in securing the contract, with a right of action over against the Government for any loss he might have sustained by reason of his own neglect in not discovering the errors of which he complains. To so hold would, in our opinion, tend to defeat the purpose of the law requiring public works to be let by advertisement to the lowest responsible bidder.”
And so in the present case the loss sustained by the claimant in having to procure a second iron beam, as set forth in finding iv, was through his own negligence, and he is not therefore entitled to recover therefor.
Another provision of the general instructions to bidders, under the head of “ Inspection and acceptance of work,” relied upon by the defendants, is that—
“Each bidder must understand that, should his proposal be accepted, the materials delivered and the work performed by him, at any and ali times during the progress of the work and prior to the final acceptance of and payment for the same, shall be subject to the inspection of the Supervising Architect or his authorized agent, with the full right to accept or reject any part thereof that, in the opinion of the Supervising Architect or his authorized agent, is not strictly in accordance with the drawings and specification; and that he must, at his expense, within a reasonable time, to be specified by the Supervising Architect, remedy any defective or unsatisfactory material or work; and that in the event of his failure to do so, after notice, the Supervising Architect will have the full right to have the same done and to charge the cost thereof to his account.”
We think it may now be regarded as settled law that where one contracts, as in the case at bar, with the Government to furnish materials and perform work subject to inspection, with the right to accept or reject any part thereof which in the opinion of the officer named in the contract is “not strictly in accordance with the drawings and specification,” that the decision of said officer, in the absence of fraud or such gross error as would imply bad faith, is final and conclusive; and being final and conclusive it becomes the duty of the contractor, at his own expense, to “remedy any defect or unsatisfactory material or work” so rejected by conforming the same to the drawings and specification. (Kihlberg v. The United *524 States, 97 U. S., 97; 109 U. S., 618; Kimball Case, 24 C. Cls. B., 35; Kennedy Case, 24 C. Cls. B., 122; Gleason & Gosnell, 33 C. Ols. B., 65.)
The requirement of the claimant to perform the work set forth in finding v was reasonable and in conformity with the drawings and specifications, and hence there can be no recovery therefor.
In respect of the extra of additional work which the findings show was done by direction of the local agent, without the knowledge of the Supervising Architect, the defendants contend that no implied contract can arise therefrom to pay for said work; and in this they are correct under the decisions in the Dole Case (14 C. Cls. E., 514); Ford’s Case (17 C. Cls. B., 60); Kennedy Case (24 O. Ols. B., 122); Ferris Case (28 C. Cls. B., 332); ffawláns Case (96 U. S., 689) and many other authorities which might be cited in support of the proposition stated.
In respect of alterations and additions in the materials or work called for by the drawings and specifications, the contract provides “that no claim for compensation for any extra materials or work is to be made or allowed, without the same being first agreed upon and specifically authorized in writing by the Supervising Architect, under the approval of the Secretary of the Treasury.”
The Supervising Architect, therefore, was the authorized contracting agent for the Government, and without his sanction therefor the claimant had no right of authority to perform, at the expense of the defendants, the additional work set forth in finding vii, and of this he was bound to take notice and govern himself accordingly.
The local or subordinate agent made no promise to the claimant or to his authorized agent that the Government would compensate him for the additional work so performed, and if he had done so such promise would have been void, as he was without authority to contract in respect thereto.
In the Dale Case (supra) it was .said, “It was the claimant’s duty to see to it that the agent who ordered this change (or addition) had authority from Washington to do it.”
In the Ford Case (supra) it was said, “If the contract in this case, had been made by the Chief of Engineers, the extra work ordered by the engineer in charge would- have been without authority.”
*525 In tbe Ferris Case (supra), wherein tbe engineer in charge of tbe work bad ordered more onerous work to be done than that required by tbe terms of tbe contract, and verbally promised that tbe contractor should be paid therefor, tbe court, in speaking of a provision in the contract similar to tbe one in tbe case at bar, said:
“It keeps within tbe power of tbe Department, or tbe office making tbe agreement, tbe control of the contract, and prevents persons in charge of tbe mere execution of tbe work from changing tbe rights and increasing tbe liability of tbe Government. * * *
“To now bold that tbe officer in charge of tbe work bad a right, by any act done or omitted to be done, to change tbe terms of tbe agreement, or to so change tbe rights of tbe parties from which an implied agreement might arise, is to relegate to tbe discretion of such officer the powers which, by tbe terms of tbe contract, are reserved to bis superior officers. Such a construction of tbe law might lead to the most dangerous consequences to tbe Government by changing its rights from tbe jurisdiction of officers intrusted with tbe original making of tbe contract, and from tbe certainty of written agreements to the uncertain terms of oral contracts.”
Before a contract can be implied in this case it is incumbent upon tbe claimant to show that tbe additional work for which be claims compensation was performed by him by authority of tbe contracting officer, and, too, under circumstances indicating a purpose on tbe part of such officer to make compensation therefor. This the claimant has not done, and for that reason we bold that be is not entitled to recover for tbe additional work set forth in finding vi.
Nor are tbe relations of tbe parties changed by reason of tbe defendants having accepted tbe building with notice that tbe claimant demanded compensation for tbe work so performed. Tbe building was, and of necessity bad to be, accepted as an entirety; and since tbe additional work for which tbe claimant seeks compensation was done by him without the authority or knowledge of tbe defendants’ authorized agent, be is not in position to take advantage thereof, and hence no implied contract can arise from tbe mere acceptance of the building.
Tbe claimant, without any fault on bis part, was delayed in tbe prosecution of tbe work by the acts of tbe defendants for eleven months and eighteen days, but in view of tbe sundry *526 supplemental contracts entered into between tbe parties for certain extra work, for which the claimant was paid as set forth in the findings, we have deducted from the period of delay one month and eighteen days as being about the time reasonably required to perform said extra work, leaving ten months as the time of delay caused by the acts of the defendants.
For this delay the claimant seeks to recover the items of damages set forth in the petition, aggregating $2,574, but we have only set forth in the findings the two items of extra time of foreman and extra time of the claimant, fixing for the first the amount actually paid out by the claimant during the time of delay, which was reasonable, and allowing the claimant, as superintendent for the extra time during the period of delay, $1,500, as reasonable compensation therefor. These are the only items of damage which were the proximate result of the acts of the defendants, the other items not being such as were within the contemplation of the parties when the contract was entered into, and are not, therefore, allowable. The damages recoverable are limited in law to the proximate consequences of the breach complained of; and, applying that well-known rule, the defendants could not when they entered into the contract have contemplated the other items of expense mentioned in the petition, and for that reason the claimant will only be allowed for the money actually paid out to his foreman and reasonable compensation for his own time as superintendent during the ten months’ delay.
From what has been said it follows that the claimant is entitled to recover on finding hi the balance due on the contract, and on finding vn the damages for the delay aforesaid, aggregating $2,457.25, for which judgment will be entered.
Nott, Oh. J., was absent when this case was heard, and took no part in the decision.