WeldoN, J.,
delivered the opinion of the court:
On the 25th of May, 1893, the claimants filed a petition in which it io, in substance, alleged, that on the 21st day of *454 August, 1883, the United States granted to Edward Sprague, one of the petitioners, Letters Patent No. 283725, which provided a process of securing bolts in masonry, consisting— First, in boring a perforation in the masonry of larger diameter than the body of the bolt;
Second, placing therein a bolt having an enlarged toe; and
Third, packing the interval between the body of the bolt and the wall of the perforation with rings of lead, duly tamped. The combination with a bolt having an enlarged toe B, and threaded outer end C of the lead packing rings, arranged on the body of the bolt as specified; that the said patent, for a valuable consideration, was, before the use of it by the defendants, partly assigned to the other claimants; that the United States, through its proper officers, with knowledge of the said patent, and by the consent of the claimants since the 18th of March, 1886, used the said patented bolt, and until the bringing of this suit at the several places in the said petition alleged and at divers other places on the Wabash, Mississippi, and Ohio rivers, and at divers places along the Atlantic coast in the construction of dams, locks, and other works belonging to and being constructed by the United States; and that the use of the same by the defendants was of the value of $300,000. The amount claimed in the request for finding of fact is $2,865.33.
To the claim of the petitioners the defendants allege that the device or process aforesaid was not patentable at the time Sprague procured letters patent; that whatever was used by the defendants at most of the points was used with the understanding and agreement that the same was used at the instance of the claimants as an experiment; that nothing was to be charged for said use by the claimants, the said claimant, Edward W. Sprague, being at the time of the alleged use in the employ of the United States as superintendent of some of the works in which it is alleged that the said process was used.
It is further contended on the part of the defendants, that if any were used at other points than where the said Sprague was superintendent and subject to the understanding aforesaid, the same was used without any authority upon the part of the agent or officer legally in charge, and that no express *455 or implied contract exists as to the use of the process at those points.
In the view which the court has taken of the rights of the parties founded upon the facts of the findings, it is not necessary to examine and determine the question as to the validity of the patent.
Conceding the patent to be valid, if the same was used by the defendants with an understanding and agreement that the United States was not to be charged for the use of the same, then no recovery can be obtained for so much of the use of the process as is covered by such understanding and agreement; and if upon the other portions of the work.the process was used without authority or the knowledge of the proper officer or agent of the Government having control and jurisdiction of the work, then no legal liability would arise against the United States for such use.
In order to successfully maintain the contention of the petitioners, it must be shown that in the use of the device there exists as to its use an express or implied agreement on the part of the defendants to pay for the use of the same, and the express agreement must arise from the contract of the parties, and the implied agreement, from the acts of the defendants, through their proper officer, in the use of the same, conceding it to be private property and claiming no right or title to the same. This theory of the law is sustained by the decisions of the Supreme Court and this court in many cases.
In the case of Schillinger v. The United States (24 C. Cls. R., 278), after a most elaborate examination and discussion of the many decisions on the point in controversy in this proceeding, the court says:
“A careful examination of these cases shows that a contract to pay is implied whenever the Government, acting through a competent agent, takes or uses individual property, acknowledging explicitly or tacitly that the property is individual property. * * * Where, however, there is a denial of the private right in an alleged patent, and the invention is nevertheless appropriated or used by the Government, the appropriation or use is in the nature of a tort, and an action thereon is not within the general jurisdiction of this court. So if it had not been disputed that the Schillinger patent was *456 valid, and the invention had been used by the Government acting through a competent agent, a contract for royalty would be implied.”
Considering the rights of the plaintiff in the law as announced in this case, the question arises whether the appropriation of the property of the claimants was the result of the act of the lawfully authorized and competent agents of the Government. The Chief of Engineers refused to make any contract with the claimant, Edward W. Sprague, for the use of his invention, and he having the right to determine that question from the nature and character of his office, that decision, especially as it was known to the claimants, is binding upon their rights. The United States are not to be held responsible for the acts and declarations of persons in charge of the construction of the work in the making of contracts, either as express contracts or by implication of law, in violation of the authority of their superior officers. So that if the defendants’ engineers, who were subordinate to the Chief of Engineers, used the plaintiff’s invention or device such use was in violation of the rights of the United States, and no contract can be implied from such user.
To hold otherwise, the rights of the United States would be determined not by the responsible officer intrusted with the exercise of the power affecting such rights, but by the acts of subordinate officers, who might from time to time be employed as the mere executors of the will and purpose of the officer having the legal right to bind the United States. The engineers in charge were not the agents of the United States in the sense of being clothed with authority, either by their expressions or their acts, to make a contract binding upon the defendants.
In the case of Ferris v. The United States (28 C. Cls. R., 332, 342) it is said in reference to the power and right of the Chief of Engineers that the provision in a contract requiring his approval is very important. “It keeps within the power of the department, or the office making the agreement, the control of the contract and prevents persons in charge of the mere execution of the work from changing the rights and increasing the liability of the Government.” In the case of *457 Driscoll v. The United States (34 C. Cls. R., 508) the Ferris and many other cases are cited to sustain that theoi’y of the rights of the Government. In the Driscoll case it is said:
“The Supervising Architect, therefore, was the authorized contracting agent for the Government, and without his sanction therefor the claimant had no right or authority to perform, at the expense of the defendants, the additional work set forth in finding vn, and of this he was bound to govern himself accordingly.”
Upon this branch of the case the fifth finding is in substance, as follows: In 1886, the claimant, Edward W. Sprague, proposed to the Chief of Engineers to sell to the United States the right to make use of the patent, who admitted that it might be useful and asked for models and descriptions; but stated to the claimant that the Government did not purchase patents, but made use of improvements, purchasing them from the manufacturers rather than by buying patent rights and undertaking to make the article; that the matter' would be called to the attention of the engineer in charge and that arrangements might be made with whoever manufactured the bolts in case they wore useful.
This clearly shows, that the officer of the United States who had charge of the construction of the defendant’s improvements refused to make a contract with the claimants to use the right of the device or process, and express^ negatives the existence of an express agreement to use the device, except by purchasing from the parties who had the right and actually manufactured the article.
The officers who were in charge of the construction of the works in which it was used were in subordination to the Chief of Engineers in authority, and had no right to assume to pay for the use of the device against the express refusal of that officer.
The Engineer in Chief, having declined to purchase the right to use the patent or device of the claimants, his subordinates, in the practical construction of the work, had no authority to bind the defendants in contradiction and contravention of what was done by the superior officer in refusing to bind the United States by the making of an express contract. If any *458 agreement was made with the subordinate agents of the United States in violation of the refusal of the Chief of Engineers, it would not be binding on the United States, because the claimants had knowledge of the refusal of the officer of superior author^ to contract for the u«e in behalf of the Government.
In the case of Dale v. The United States (14 C. Cls. R., 515) it is in substance said: Where a contract provides that no claim shall be made bjr the contractor for extra work unless ordered with the approval of the Chief of Engineers, the contractor can not recover for extra work or material fui’nished by the direction of the local agent without the knowledge or approval of the Chief of Engineers.
The refusal of the Chief of Engineers to contract with the claimant for the use of the patent, which refusal was known to the claimant, was not only a limitation on the subordinate agents to agree as to compensation, but also upon their right to use and adopt the device from which an implied liability might arise. In the Schillinger case it is said that there may be a distinction in the taking of intangible and tangible property, but in that case the taking of intangible property by an incompetent or unauthorized agent was held not such a taking as from which an implied obligation on the part of the Government to pay could be deduced.
The findings show that a part of the use of the device was upon certain portions of the work, and that in consideration that one of the claimants was employed as foreman, and the fact that an experiment might be made of the utility of the invention, no charge was to be made for that part of the work, and that on the other portion of the work the process was used without the knowledge and consent of the Chief of Engineers and in violation of his express declaration that the Government would not undertake or agree to pay a royalty.
For these reasons the plaintiffs have no right to recover, and the petition is dismissed.