Littleton, Judge,
delivered the opinion of the court:
Plaintiff seeks to recover $9,578.08, losses and damages alleged to have been sustained by him under an alleged breach of a contract.
September 18, 1929, plaintiff entered into the contract in question for the delivery of certain quantities of feeding and bedding hay of specified grades at Fort Sam Houston and Camp Stanley. Approximately the entire amount of bedding hay was delivered either as hay submitted for that *131 purpose or by diversion from hay rejected on the portion of the contract applicable to feeding hay. No claim is made on account of loss or damage under that portion of the contract relating to bedding hay.
With respect to the feeding hay, plaintiff experienced difficulty from the beginning in having the hay submitted by him accepted as fulfilling the terms of the contract. Plaintiff had made and filled many contracts with the Government for hay of the class called for by the contract in suit and under the same or similar regulations. He had been furnishing hay to the defendant for many years, and such hay had been accepted with a relatively small number of rejections. However, after the contract here involved had been executed and about the time he began deliveries thereunder, criticism was made of the character of hay which was being accepted by the hay inspectors in that locality, and thereafter much more rigid inspections were made with the result that a high percentage of the hay submitted was rejected. Only two of the first twelve cars delivered by plaintiff were accepted, and of the 57 cars delivered during the first two months only ten were accepted. After repeated rejections and after unsuccessful attempts on the part of the plaintiff to secure hay which was acceptable, plaintiff ceased attempting to make deliveries, alleging a breach of the contract. Thereafter defendant made purchases of the hay desired by it and charged its excess cost, amounting to $4,045.43, against plaintiff. The portion of the hay which was rejected by the defendant was sold by plaintiff at a loss of $1,391.27. Plaintiff seeks to recover the two aforementioned amounts, as well as an amount of $876.37 alleged to have been expended in connection with the hay which was rejected, and approximately $3,100, which, for the most part, represents an alleged anticipated profit on the hay which was not tendered under the contract.
At the outset it should be observed that parties to a contract are bound by the plain terms thereof, and mere hardships or inconveniences involved in its fulfillment will not relieve a party from complying therewith. Lewman, et al. v. United States, 41 C. Cls. 470; Penn Bridge Co. v. Kershaw County, 226 Fed. 728; and Columbus Railway, Power *132 & Light Co. v. City of Columbus, Ohio, et al., 249 U. S. 399. It is likewise true, however, that where unnecessary hardships or inconveniences resulting in loss or damage are brought about by acts of the opposite party, such acts may well constitute a breach of the contract and relieve the party upon whom the hardships and inconveniences are placed from complying with its terms. Eaton, Brown & Simpson, Inc., v. United States, 62 C. Cls. 668; and Levering & Garrigues Co. v. United States, 71 C. Cls. 739. The latter situation is, in our opinion, that presented in the case at bar. Plaintiff entered into a contract for the delivery of a certain grade of hay which was to be delivered under certain specified conditions. For many years prior to the time the contract was entered into plaintiff had been delivering to the defendant hay of the grade specified in the contract, and such hay had been inspected and accepted as conforming to that grade under the regulations. Shortly before plaintiff began deliveries, but after the contract had been executed, the defendant began a more rigid inspection, with the result that hay of the character which had theretofore been accepted was rejected. This, of course, would not constitute a breach of the contract if the inspections were proper. Since the contract specified by its terms the grade of hay that should be furnished, it was incumbent on plaintiff to furnish that grade regardless of what might have been furnished by that name under prior contracts. Plaintiff’s complaint, however, goes much deeper than that and reveals arbitrary and capricious action on the part of the defendant’s representatives respecting the hay submitted. For the most part at least, the majority of rejections of hay tendered by plaintiff in fulfillment of his contract were grossly erroneous and improper under the hay inspection regulations and the contract terms. Moreover, the hay purchased by the defendant to make up the deficiency which plaintiff refused to deliver., on the ground that the hay tendered by him in most cases at least had been improperly rejected, was of a better or more expensive class than that contemplated under plaintiff’s contract.
One of the provisions of the contract with respect to the delivery of hay was that where hay had been inspected by *133 a civilian Federal hay inspector prior to its submission to the defendant the grade so fixed by such inspector would he final and the hay so inspected would be accepted unless there was obvious error or unless the hay was heating, wet, moldy, or musty. The principal controversy with respect to the grading of the hay in question arose over whether it contained the requisite percentage of green color, namely, 35 percent. No machines were in use at that time for such purpose, and, therefore, such determination was made from a physical examination by each inspector. Inspectors could well differ as much as five percent without such difference being considered obvious error within the meaning of the contract. In many instances plaintiff had his hay inspected prior to its delivery to the defendant and presented such hay with complete inspection certificates showing it graded as hay of the classification called for in the contract. The officers at destination, however, in many instances refused to accept the inspection certificates and grading as made by the prior inspector and accordingly rejected the hay. We are satisfied from the record that these rejections were arbitrary and grossly erroneous and have set out some of the instances appearing in the record which amply justify such a conclusion. For example, in one instance plaintiff submitted six cars of hay of the alleged grade called for in the contract. The inspector at the Army post rejected the hay, and it was sold by plaintiff to another contractor who had a contract with defendant for delivery of the same grade of hay at the same Army post. The hay was transferred to other cars and delivered to the defendant, whereupon it was accepted by the same inspector on the second contractor’s contract for the grade at which it was submitted by plaintiff. In other instances hay was rejected upon a partial inspection by the inspector at the Army post, and then later, after the hay was resubmitted, accompanied by a complete inspection certificate certifying to the grade called for in the contract, the hay was accepted. We are convinced that in cases where a rejection was made at the Army post, after a complete inspection by a civilian Federal hay inspector and certification that the grade conformed *134 to that called for in the contract, such rejection was due to a minor difference of opinion as to the percentage of green color, which would not be termed “ obvious error ”, and therefore was not a proper cause for rejection under the hay-inspection regulations. Such hay was otherwise in good condition. In December 1929 plaintiff submitted samples of the hay that had been rejected to the Department of Agriculture at Washington for examination, and such samples were found satisfactory under the contract and the regulations, but nothing was done to correct the erroneous rejections which had been and were being made. Apparently, in his zeal to enforce the regulations most strictly, the officer-inspector resolved all doubts against plaintiff and accepted or rejected the hay without careful and proper examination and without proper regard to prior inspections. The whole record leads us to the conclusion that this act in rejecting much of the hay submitted by plaintiff was so arbitrary and capricious as to render performance by plaintiff impossible under the terms contemplated by the contract.
When plaintiff failed to submit hay which was acceptable and ceased tendering further hay under the contract, the defendant purchased certain hay at the best prices obtainable for the hay desired by it to take care of its needs. As further tending to establish that higher standards were being enforced than contemplated at the time of the execution of plaintiff’s contract, it is noted that it was necessary for the defendant to pay from $1.65 to $5 a ton in excess of plaintiff’s bid price, or an excess of as much as 33i/f¡ percent. A reasonable inference is that if the rigid inspection and arbitrary action of defendant carried out under plaintiff’s contract had been generally known when the bids were received, the bids would have been substantially in excess of those received'. The result of what defendant did in charging the excess cost against plaintiff was to profit by its own wrong, since, in the final analysis, what it eventually paid was little, if anything, more than what it would have been required to pay had the situation which existed when plaintiff attempted deliveries existed and been generally known *135 when bids were advertised for in August 1929. On the whole record we are of opinion that plaintiff is entitled to recover such excess cost of $4,045.43 which was charged against him.
In reaching the above conclusion we are not overlooking the provision of the contract with respect to appeals and. the objection made by the defendant that recovery should not be permitted on the alleged ground that appeals were not properly taken by plaintiff. The inspections of which plaintiff complaihs were in most instances participated in by the supervisor before whom formal appeals would go for action. Plaintiff recognized the futility of appeals to him, and the supervisor testified that only in very rare instances had he ever reversed the inspector in question. Plaintiff did, however, protest against the inspections which were being made, and also went much further by bringing the matter to the attention of the contracting officer, the quartermaster supply officer, and the Department of Agriculture, which prepared the regulations under which the hay was to be submitted. Such action was taken while the hay was being delivered to the Army post in question. We find no action on these protests and appeals which could be considered final in the sense contemplated by the contract. Moreover, when plaintiff requested an opportunity to submit agreed samples, such request was denied. But when he sent in to the Department of Agriculture samples of the hay which had been rejected they were found satisfactory. We áre satisfied that plaintiff is not barred from recovering the amount claimed because óf a failure to make due and timely appeals.
In addition to the amount claimed on account of excess cost, as set out above, plaintiff also asks that he be allowed $1,391.27 on account of losses on the sale of the rejected hay, $876.37 as an amount expended in connection with rejections under the contract, and $3,141.20, largely on account of anticipated profits on the hay not. tendered under the contract. Of the first amount $862.04 represents alleged losses on account of a diversion of feeding hay rejected and applied at plaintiff’s request on the portion of the contract *136 applicable to bedding hay, and the balance, $529.23, represents losses on sales to other persons. The record does not show to what extent, if any, these losses occurred on account of improper rejections. They cannot, therefore, be allowed. With respect to the expense item of $876.37 and the amount of $3,141.20, claimed on account of anticipated profits, the record is insufficient to establish either their accuracy or a basis for allowance.
It accordingly follows that plaintiff is entitled to recover and judgment in the amount of $4,045.43 will be entered in his favor. It is so ordered.
Whaley, Judge; Williams, Judge; Green, Judge, and Booth, Chief Justice, concur.
MEMORANDUM BY THE COURT ON MOTION EOR LEAVE TO FILE AMENDED PETITION AND MOTION FOR NEW TRIAL
In this case the court decided that plaintiff was entitled to recover $4,045.43 under contract W-503 QM 6223, office number 961, September 18, 1929, representing the amount erroneously charged by the defendant against plaintiff for the excess cost of hay purchased by it to apply on said contract. Plaintiff has filed a motion for leave to file an amended petition so as to claim interest at the rate of six percent per annum on the amount of the judgment from August 21,1931, in which motion plaintiff also asks that finding XY in this case be amended so as to show the withholding by the Comptroller General of $4,045.45 due under another contract, W-503 QM 7549, July 3, 1930, and the applying of that amount by that official on the alleged indebtedness of the plaintiff under the contract in suit.
These motions must be denied for the reason that this suit was brought for a breach of contract W-503 QM 6223 in charging plaintiff with the excess cost of $4,045.43, above mentioned, and not for the recovery of the amount of $4,043.43, with interest, duly allowed and withheld under contract W-503 QM 7549. No interest is allowable by the court in its judgment rendered under contract W-503 QM 6223, since that contract did not provide for interest, and *137 no amount due thereunder was allowed by legal authority and withheld. If the defendant should refuse to pay interest under the act of March 3, 1875, on the amount duly allowed and withheld under contract W-503 QM 7549, plaintiff may have a cause of action therefor, but such claim for interest cannot be raised and made, at this time, under a suit, upon contract W-503 QM 6223.