## HAWKINS *v.* UNITED STATES.

1. A. agreed to furnish the United States a number of cubic yards of rubble-stone, for the construction of a public building under a contract which, after prescribing the dimensions of the material, and the price to be paid therefor, provided that no departure should be made from its conditions, without the written consent of the Secretary of the Treasury. Such consent was not given. The assistant superintendent, in charge of the erection of the building, declined to receive certain of the stones, although they were within the description of the contract; and required A. to furnish others of a different and more expensive kind, which the latter did. *Held*, that, as A. was bound to take notice of the fact that the assistant superintendent had no power to vary the contract. he is only entitled to recover according to its terms.
2. The question of agency discussed.

APPEAL from the Court of Claims.

The facts are stated in the opinion of the court.

*Mr. Enoch Totten* for the appellant.
*Mr. Assistant-Attorney-General Smith, contra.*

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Verbal agreements between the parties to a written contract, made before or at the time of the execution of the contract, are in general inadmissible to vary its terms or to affect its construction, the rule being that all such verbal agreements are to be considered as merged in the written instrument. But oral agreements subsequently made, on a new and valuable consideration, and before the breach of the contract, in cases not falling within the Statute of Frauds, stand upon a different footing; as such agreements may, if not within the Statute of Frauds, have the effect to enlarge the time of performance, or may vary any other of its terms, or may waive and discharge it altogether. *Emerson* v. *Slater*, 22 How. 28; *Goss* v. *Nugent*, 5 Barn. & Ad. 58; *Nelson* v. *Boynton*, 3 Met. (Mass.) 396; *Harvey* v. *Grabham*, 5 Ad. & E. 61; *Leonard* v. *Vredenburgh*, 8 Johns. (N. Y.) 28; Chitty, Contr. (10th ed.) 105.

Authority was conferred upon the Secretary of the Treasury, by the act of the 10th of June, 1872; and he was therein directed to cause to be erected a suitable building at Raleigh, North Carolina, for the use and accommodation of the courts of

·the United States, post-office, and other offices of the government, with fire-proof vaults extending to each story of the building. 17 Stat. 390.

Pursuant to that authority, the contract in question was made by the superintendent appointed for the purpose, with the plaintiff, to furnish and deliver, on the site for the building, one thousand cubic yards, more or less, of rubble-stone, on his bid for the same; it being covenanted and agreed between the parties that the "contract shall be valid and ·binding· when approved by the Secretary of the Treasury, and not otherwise, and that no departure from its conditions shall be made with out his written consent."

By the terms of the contract, the rubble-stone was to be in every way equal to the sample furnished with his bid: one-quarter to be bond-stones, of a length equal to the thickness of the walls, and to contain not less than ten cubic feet; and no stone to contain less than one and one-half cubic feet, or to be less than twelve inches thick, to be delivered at such times and in such quantities as may be deemed necessary by the superintendent. Monthly payments were to be made, as the work progressed, for ninety per cent of the stone delivered, at five dollars per cubic yard; it being stipulated that ten per cent should be retained until the completion of the contract and the approval and acceptance of the same by the superintendent.

Leave to amend having been granted, the petitioner enlarged his charge for work done, and claimed that there was a balance due to him of $8,962.50, after deducting cash paid, and the rubble-stone quarried and rejected before it was shipped. Hearing was had, and the court rendered judgment for the plaintiff in the sum of $1,566.50, as appears by the transcript. Immediate appeal was taken to this court by the plaintiff; and he assigned the errors following: 1. That the court below erred in the measure of damages which they adopted in the case. 2. That the court erred in not holding that the claimant is entitled to recover the fair value of the material delivered and accepted, without regard to the price prescribed by the contract. 3. That the court should have computed the stone furnished as nine hundred and fifty-eight and three-fourths cubic yards, at $12.50 per yard, as the value of the stone delivered.

Congress directed the Secretary of the Treasury to cause the building to be erected, and appropriated $100,000 to accomplish the object; the same act providing that the money appropriated should be expended under the direction of the Secretary, and that he should cause proper plans and estimates to be made, so that the whole expenditure for the construction and completion of the building should not exceed the amount of the appropriation. Neither limitations nor precautions are always effectual in such cases; and Congress, at the next session, found it necessary to make another appropriation of the same amount, for the same object: but the provision that the Secretary of the Treasury should cause the building to be erected, and that the money appropriated should be expended under his direction, was never repealed or modified. 17 Stat. 524; 18 id. 228.

Such being the state of congressional legislation, it necessarily follows that the contractor, as well as the superintendent, knew that the appropriations were to be expended by the Secretary, and that no one else was authorized to direct as to the character and construction of the building. Individuals as well as courts must take notice of the extent of the authority conferred by law upon a person acting in an official capacity; and the rule applies, in such a case, that ignorance of the law furnishes no excuse for any mistake or wrongful act. *State, ex rel. &c.* v. *Hayes,* 52 Mo. 578; *Delafield* v. *The State of Illinois,* 26 Wend. (N. Y.) 91; *The People* v. *The Phœnix Bank,* 24 id. 430; *The Mayor and City Council of Baltimore* v. *Reynolds,* 20 Md. 1; *Whiteside* v. *United States,* 93 U. S. 247.

Different rules prevail in respect to the acts and declarations of public agents from those which ordinarily govern in the case of mere private agents. Principals in the latter category are in many cases bound by the acts and declarations of their agents, even where the act or declaration was done or made without any authority, if it appear that the act was done, or the declaration was made, by the agent in the course of his regular employment; but the government or public authority is not bound in such a case, unless it manifestly appears that the agent was acting within the scope of his authority, or that he had been held out as having authority to do the act, or make

the declaration, for or on behalf of the public authorities Story, Agency, 307 *a; Lee* v. *Munroe*, 7 Cranch, 366.

Fifty cubic yards of rubble-stone were quarried, shipped, and delivered by the contractor soon after the contract was executed, which was rejected by the assistant superintendent of the work, and he refused to receive any of the same description. By the finding of the court, it appears that the rubble-stone rejected was such as came within the description and standard of the small-sized stone required by the contract, and that the assistant superintendent informed the claimant of the kind which must be furnished to make such a wall as he wanted; which was, in fact, what is called ranged-rubble or broken-ashlar stone, more expensive in kind than that described by the contract, and which would make a wall superior in appearance to that contemplated by the specifications. Two hundred and thirty cubic yards of rubble-stone had then been quarried by the claimant, and were ready for transportation and delivery. Wheeler, Civil Engineering, 209.

Throughout, the claimant maintained that he thought that the stone he had delivered was up to the contract: but he expressed the desire to furnish such material as would give perfect satisfaction to the government and their agents; and he quarried, transported, and delivered, within the period mentioned in the finding, nine hundred and fifty-eight and three-fourths cubic yards of ranged-rubble or broken-ashlar stone, different from that described in the contract, and worth $12.50 per cubic yard when delivered. These stones so furnished were cut, trimmed, and squared by the workmen, so, as to fit the same for such a wall as the assistant superintendent desired to make, it appearing that one-fourth part of the measurement of the stone was lost by such fitting. Apart from that, the findings of the court also show that the market-value of the fifty cubic yards of the rubble-stone rejected, and of the two hundred and thirty cubic yards quarried and not shipped, was $456.80, which is nearly $350 less than the cost of quarrying the said quantity not shipped.

Tested by these considerations, it is clear that the measure of damages adopted by the Court of Claims is correct.

Three items were allowed to claimant, as follows:   1. For

nine hundred and fifty-eight and three-fourths cubic yards of stone delivered, at the contract price of five dollars per yard, less the amounts paid to him in the settlement of his account. 2. Forty-five cubic yards of rubble-stone delivered, and rejected by the assistant superintendent, at the contract price, less the market value of the same. 3. For two hundred and thirty cubic yards of stone quarried, and refused by the assistant superintendent, at the cost of quarrying, less the market value.

Sufficient appears to show that the contract was never rescinded by either party, and that the claimant never signified any intention to abandon it. All that is proved in that regard is that he maintained that the first parcel of stone delivered was up to the contract; and that he protested, in presence of the inspector and superintendents, that he was required to furnish stone superior to that described in the contract, and that he announced to them his intention to make claim for extra allowance. Four payments were made to the claimant, amounting in all to $3,825; and it appears that the vouchers were generally made out upon estimates in advance of the work actually done at the time, copies of which, with the certificate of the superintendent and the receipts of the claimant, are exhibited in the record.

Evidence of the most persuasive and convincing character, to show that the whole quantity of the stone for which compensation is claimed was delivered under the contract, is exhibited in the record; and it is equally certain that the claimant knew that the agents in charge of the work had no authority whatever to enlarge or diminish, vary or alter, any of its terms, stipulations, or conditions, as the contract itself provided that no departure from its condition shall be made without "the written consent of the Secretary of the Treasury." Confirmation of that view is also derived from the act of Congress which conferred the authority to make the contract; the language of the act being that the money appropriated shall be "expended under the direction of the Secretary of the Treasury; and that he shall cause proper plans and estimates to be made, so that the whole expenditure for the erection and completion of the building shall not exceed the sum appropriated for that purpose." 17 Stat. 390.

Aid in the construction of the contract may be derived from the advertisement under which the bids were received, as the advertisement is expressly referred to in the written contract. Bids were invited by the advertisement for one thousand cubic yards, more or less, of rubble-stone . . . which is flat on the bed, sound, durable, and which breaks with a clean, square fracture; one-quarter to be bond-stones of a length equal to the thickness of the walls, and to contain not less than ten cubic feet. No stone containing less than one and one-half cubic feet, or less than twelve inches in thickness, will be received. Wheeler, Civil Engineering, 140.

Nothing can be plainer than the proposition that the contract was framed in conformity with the advertisement and the act of Congress, which provided in effect that the erection and completion of the building should be under the direction of the Secretary of the Treasury. Both parties concur in the construction of the written contract; but the claimant undertakes to set up a subsequent implied contract between himself and the assistant superintendent.

Beyond doubt, it is true that subsequent oral agreements between the parties to a written contract, not falling within the Statute of Frauds, if founded on a new and valuable consideration, may, when made before the breach of the written contract, have the effect to enlarge the time of performance specified in the written instrument, or may vary any other of its terms, or may waive and discharge it altogether. *Emerson* v. *Slater*, 22 How. 28; *Goss* v. *Nugent*, 5 Barn. & Ad. 58; *Leonard* v. *Vredenburgh*, 8 Johns. (N. Y.) 28.

Concede that proposition in its fullest extent, and yet it cannot benefit the claimant, as the findings of the court furnish no ground whatever to show that any subsequent parol agreement was ever made between the contracting parties to vary, enlarge, or diminish any of the terms of the written contract; nor is any thing of the kind pretended by the appellant. What he alleges is, that he was required by the assistant superintendent to furnish better stone than that specified in the written agreement. Proof of that allegation is exhibited; but there is not a particle of proof that the assistant superintendent ever promised that the United States should pay for the stone delivered any

greater sum than five dollars per cubic yard; and, if he had so promised, it could not benefit the claimant; as the contract under which he rendered the service, and under which the four payments to him were made, contained the express stipulation that no departure from the conditions of the contract should be made without the written consent of the Secretary of the Treasury.

Four times, his accounts for rubble-stone delivered were adjusted during the progress of the work, in accordance with the terms of the written contract, as follows: 1. For three hundred cubic yards of rubble-stone at five dollars per cubic yard. 2. For two hundred cubic yards of rubble-stone at five dollars per cubic yard, and the account refers to the written contract as the basis of the charge. 3. For one hundred and fifty cubic yards of rubble-stone at five dollars per cubic yard, less ten per cent retained, and again refers to the written agreement as the source of explanation. 4. For two hundred cubic yards of rubble-stone at five dollars per cubic yard, less ten per cent reserved, with a similar reference to the written agreement for the necessary explanation.

Appended to each is the customary certificate of the superintendent, and the receipt of the claimant for the amount of the charge, stating that it is received " in full payment of the above account." Proofs more persuasive and convincing that the work was done and that the payments were made under the written agreement can hardly be imagined; and they are certainly sufficient to show that the court below committed no error, either in the findings of fact or in their conclusions of law.

Ranged-rubble or broken-ashlar stones are usually of a larger size than ordinary rubble-stones; and the former when trimmed are suitable to make a wall of coursed masonry, as if constructed of squared stone of different sizes, resembling somewhat a wall constructed of dimension-stones. Loss to a considerable extent is sustained by the cutting and trimming, so that the stone measures less in the wall than when first quarried. Such a wall is more expensive than one made of mere rubble-stone, on account of the increased cost of the stone, and the additional labor in cutting and fitting the same before it is laid in the wall.

Rubble-stones flat on the bed, with certain other conditions, were specified in the advertisement; but the assistant superintendent desired to construct a wall which required a ranged-rubble stone. Mutual consent is required to modify a contract; and of course the directions of the assistant superintendent were not obligatory, for two reasons: 1. Because in contemplation of law he was not a party to the contract; 2, because he had no authority to act in behalf of the United States.

Viewed in that light, it is clear that the claimant might have declined to follow the directions given, or, if not allowed to complete his contract, might have maintained an action for damages. When the directions were given, he might have refused to comply and given notice to the United States; and, if he had done so, the proper authority would have had an opportunity to determine whether the directions given should be overruled, or whether the wall should be constructed as proposed by the assistant superintendent. Nothing of the kind was done, and the opportunity was lost to the United States to exercise any option in the matter. Instead of that, the claimant readily submitted to the directions given by the unauthorized agent, without giving any notice to the proper authority of the United States that he should claim any greater compensation. Subsequent complaints were made by him, in the presence of the superintendents, that he was required to furnish a superior stone to that required by the contract; and at one time he announced his intention to make claim for extra allowance which is in fact what the claimant now demands.

Two facts are the chief reliance of the claimant; to wit, 1, that the stone delivered is better than that which the claimant contracted to furnish; 2, that the United States accepted the material, and is now in the full enjoyment of the same. Based on these facts, the proposition of the claimant is that he is entitled to recover the actual value of the materials, without reference to the contract price: which cannot for a moment be admitted, as the findings show that the written contract was in full force and operation, no attempt having been made by either party to vary or rescind it; and that the claimant acted under it in furnishing and delivering the stone; and that the public authorities, also, in adjusting his accounts and in making

the payments referred to, conformed in all respects to its terms, stipulations, and conditions.

Unquestioned authority was given to the Secretary of the Treasury to make the contract; and he in contemplation of law made it when he approved the instrument signed by the claimant and the superintendent. Even the claimant does not pretend that any other contract was ever approved by the Secretary, nor does he pretend that the assistant superintendent ever promised to pay any greater sum than the original contract price. All the claimant ever suggested was, that he intended to make claim for extra allowance, for which there is no pretence of any express contract; nor can such a claim be supported, under the circumstances of this case, upon any implied promise, the record showing that the express contract was in full force and operation. *Ladd* v. *Franklin*, 37 Conn. 62.

Express stipulations cannot in general be set aside or varied by implied promises; or, in other words, a promise is not implied where there is an express written contract, unless the express contract has been rescinded or abandoned, or has been varied by the consent of the parties. Hence the rule is, that, if there be an express written contract between the parties, the plaintiff in an action to recover for work and labor done, or for money paid, must declare upon the written agreement so long as the special agreement remains in force and unrescinded, as he cannot recover under such circumstances upon a *quantum meruit*. 1 Story, Contr. (5th ed.), sect. 18; *Selway* v. *Fogg*, 5 Mees. & W. 83; *Creighton* v. *City of Toledo*, 18 Ohio St. 447; *Weston* v. *Davis*, 24 Me. 374; *Whiting* v. *Sullivan*, 7 Mass. 107; *Merrill* v. *The Ithaca & Owego Railroad Co.*, 16 Wend. 586; *Glacius et al.* v. *Black*, 50 N. Y. 145.

When a special contract for work and services has been abandoned and put an end to, if the employer has derived some benefit from work done under it, he may be made liable upon an implied promise to make reasonable remuneration in respect to such work. *Burns* v. *Miller*, 4 Taunt. 745; *Inchbald* v. *Plantation Company*, 17 C. B. N. s. 733; *Bartholomew* v. *Markwick*, 15 C. B. N. s. 711; Addison, Contr. (6th ed.) 23.

Implied promises or promises in law exist only when there is no express promise between the parties, — *expressum facit*

*cessare tacitum.* Hence, says Chitty, a party cannot be bound by an implied promise, when he has made an express contract as to the same subject-matter; which is certainly sound law, unless the express contract has been rescinded or abandoned. Chitty, Contr. (10th ed.) 62; *Toussaint* v. *Martinnant*, 2 T. R. 100; *Cutter* v. *Powell*, 6 id. 320; *Ferguson* v. *Carrington*, 9 B. & C. 59; *Atherton* v. *Dennett*, Law Rep. 7 Q. B. 327.

Apply these principles to the case before the court, and it is clear that none of the errors assigned can be sustained; the rule being that, where the service is performed under an express contract, there can be no recovery where there is no proof of a breach of the agreement. Where there is a breach of the agreement, an action will lie for the breach; but, if there be no breach, no action will lie, as an implied assumpsit does not arise in such a case, unless it be shown that the parties have abandoned the express agreement, or have rescinded or modified it so as to give rise to such an implication. *The Mayor and City Council of Baltimore* v. *Eschbach*, 18 Md. 276.

Jurisdiction is not conferred upon the Court of Claims to allow mere extra allowances in a case where there is no promise to that effect, either express or implied. Power to hear and determine claims founded upon any law of Congress, or upon any regulation of an executive department, or upon any contract, express or implied, with the government of the United States, and all claims which may be referred to it by either house of Congress, is vested in the Court of Claims. Mere applications for extra allowance, unsupported by any contract express or implied, must be made to Congress, where alone they can properly be entertained Rev. Stat., sect. 1059.

*Judgment affirmed.*