Peelle, Ch. J.,
delivered the opinion of the court:
This action is to recover for extra expense, labor, and material alleged to have been incurred, performed, and furnished in the execution of a contract entered into with the United States June 27, 1908, whereby the claimant agreed, for the consideration of $18,732.71, to “ furnish all materials and labor necessary for the construction and completion of concrete curbing, sewer-pipe drains, catch basins, macadam *192 roads, brick gutters, and brick road crossings on the Army War College section of the reservation of Washington Barracks, D. C.,” in accordance with plans and specifications and general instructions to bidders attached to and made part of said contract.
It is averred that in accordance with said contract the claimant entered upon the performance thereof and completed the work to the satisfaction of the United States and was paid therefor the contract price except as to the sum of $161.11, which he avers was illegally deducted for the cost of inspection during the period of delay, and as to this item we may here say that article 5 of the contract provides “ that work on this contract shall commence on or before the twenty-ninth day of June, nineteen hundred and eight, shall be carried forward with reasonable dispatch, and be completed on or before the thirty-first day of October, nineteen hundred and eight.”
The work was not completed within the time specified, and although by article 3 of the contract provision is made for one additional day for each day’s delay the work is suspended by the Government under paragraph 2 of the specifications, the work was thereafter delayed by the claimant 174 additional days, thereby necessitating the employment by the Government of an inspector for that time, one-third of the expense of which, or $161.11, was charged to the claimant and deducted from the contract price.
While the contract makes no. provision for the payment of an inspector by the claimant during the period of delay, the delay being the fault of the claimant, as found, the additional expense was properly incurred and the claimant is not entitled to recover therefor.
Respecting the claims for extras, there is no averment in the petition nor in the proof submitted that the officer charged with the direction of the work on behalf of the Government acted in bad faith or committed gross error in requiring the work to be done; and except as to the items paid for as extras the officer required the work to be done as a part of the contract and no benefit is shown to have accrued to the United States other than that arising from *193 the performance of the contract, for which the claimant has been paid.
Paragraph 4 of the specifications provides that “ No allowance shall be made for extra work claimed to have been done, unless provided for beforehand by written agreement, specifying the cost of same.”
It is not shown that any of the expense, work, or material claimed for as extra was “ provided for beforehand by written agreement, specifying the cost of same.” If, therefore, we were to assume that the extras claimed for were in fact extras, the decision of the Supreme Court in the case of Plumley v. United States, decided January 6, 1913, would have to be held controlling. There the contract provided that changes increasing or diminishing the cost must be reduced to writing, with a statement of the price of the substituted material and work, and, too, with the approval of the Secretary of War; and in respect to which extra work the court said:
“ There was a total failure to comply with these provisions, and though it may be a hard case, since the court found that the work was in fact extra and of considerable value, yet Plumley can not recover for that which, though extra, was not ordered by the officer and in the manner required by the contract. (Rev. Stat., sec. 3744; Hawkins v. United States, 96 U. S., 689; Ripley v. United States, 223 U. S., 695; McMullen v. United States, 222 U. S., 460.)”
As will be noted, the court in effect holds that section 3744 applies in such cases. The court recognized the hardship in that case, “ since the court found that the work was in fact extra and of considerable value.”
If in such case the officer of the Government directing the work refuses to enter into a written agreement or to order the work in writing as the contract may require, on the ground that the work is embraced within the contract, then the contractor’s remedy is by appeal to a higher officer, if the contract so provides, in which case, under the ruling in the cases cited, if the decision is against the contractor he would, in the absence of fraud or gross error, be remediless.
In the present case, however, though, the contractor was aggrieved at the decision of the officer requiring the work to *194 be done as embraced within the contract, no appeal was taken therefrom, nor is there any provision therefor in the contract. Therefore, in the absence of fraud or such gross error as to imply bad faith — no!; charged — can the contractor, in the absence of a written agreement beforehand, under said paragraph 4 of the specifications, recover for the work so done ?
The case of Hawkins v. United States (96 U. S., 689) rests upon different grounds from the other cases cited. Here the Secretary of the Treasury was authorized to contract for the construction, ,at Kaleigh, N. C., of a building for court and post-office purposes, for which an appropriation was made, to be “ expended under the direction of the Secretary of the Treasury,” and he was therein directed to “ cause proper plans and estimates to be made, so that the whole expenditure for the erection and completion of the building shall not exceed the sum appropriated for the purpose.”
The contract entered into therefor provided that the same “ shall be valid and binding when approved by the Secretary of the Treasury and not otherwise, and that no departure from its conditions shall be made without his written consent.”
Under the act the whole matter of the contract and its execution devolved upon the Secretary. That is to say, he was charged with the expenditure of the money for the erection of the building and was not to exceed the amount appropriated for the purpose. Manifestly this was necessary to enable him to keep within the appropriation. Under the act and the contract the Secretary of the Treasury was not only the principal agent with whom the contractor was dealing, but the contractor was bound to know that the authority so conferred upon the Secretary could not be exceeded or delegated.
In the case of Ripley v. United States, supra, the court held that in the absence of some provision in the contract therefor a contractor was not required to appeal. That ruling applies to the present case, and the final question therefore is, Was the decision of the officer requiring the work to be done without a written agreement final ? The contract does not in terms so provide. But it does provide that “ no *195 allowance shall be made for extra work claimed to have been done unless provided for beforehand, by a written agreement specifying the cost of the same.” Force and effect must be given to this provision, especially since there is no other provision of the contract or specification modifying the same or in conflict therewith.
We have thus far proceeded as though the work done was in fact extra, though clearly nearly all, if not all, of the items claimed for ,as set forth in the findings were embraced within the contract and were necessary to be performed in the execution thereof.
Let us notice the items embraced in finding iv:
(1) One hundred and ninety-six feet radius work curbing.
In the original plans the comers were shown as square, while the specification (24) required the curbing to be curved around the comers, “ with such length of radius as the officer in charge may direct.” But whether the specifications or the plans should control is not necessary here to decide, since the error, if such it be, was corrected by the new plans submitted with the supplemental agreement of March 29, 1909, as shown in finding II, and the work was done in accordance therewith.
(2) One hundred and thirty linear feet of sewer drain.
Though this work was not shown on the plans, the sewer was necessary to connect up the catch basins shown on the plan and was in fact treated as work under the contract and paid for accordingly.
(3) Catch basins.
This work was likewise omitted from the plans and was not required by the specifications, but was done by the claimant by direction of the quartermaster, and the claimant was paid therefor at the unit price, which was reasonable.
(4) The services of one man for 5-J days.
The service of this man was furnished by the claimant at the request of the inspector to assist him in running lines and fixing grades for a portion of the work, and the amount charged therefor is reasonable, but the inspector had no authority under the contract to bind the Government by such employment, and if the same be treated as an extra there was *196 no agreement beforehand in writing for it, and hence no recovery can be had therefor.
(5 and 6) For use of men'and wagons in removing top soil.
This was for the removal of soil which had been taken out to bring the road bed to grade and was hauled by direction of the inspector first to one side about 50 feet and afterwards was hauled back and used as fill behind the curbing upon which to grow grass. Furthermore, paragraph 22 of the specifications required the claimant to do any work necessary to finish in a workmanlike manner the surface and slopes of the ground adjacent to the sidewalks and curbing and to finish the space between the sidewalks and curbing, and for that purpose it does not appear that the use of the top soil instead of other soil which the claimant would have been compelled to use imposed upon him any extra expense.
(7) Raising brick crossing 3 inches.
This crossing was put down at the right level under the direction of the inspector in charge, but it afterwards settled, and the quartermaster required the claimant to replace it, which he did at a cost of $12. The work was necessary to a finished job and would appear to be required under paragraphs 5 and 12 of the specifications; but if treated as an extra there was no agreement in writing for doing the work. Nor is it shown whether the settling was caused by defective work or otherwise.
(8) Replacing 16 feet of concrete curbing.
While the work was suspended to await the settlement or solidification of the ground the concrete curbing became broken from some unknown cause and the quartermaster required the work to be replaced and directed that an allowance be made therefor, but no payment appears to have been made. The work would seem to be required under paragraphs 5 and 12 of the specification, but treating the same as an extra there was no agreement therefor in writing and no allowance can be made therefor.
It is not shown that any formal protest was made against the doing of the work claimed for and embraced within the foregoing items.
Respecting the loss claimed in the use of the crushed stone and brick furnished by the Government under paragraph 79 *197 of the specifications, as set forth in finding V, the claimant was allowed 20 per cent on account of the dirt therein, that being the allowance made to the Government when the material was purchased.
The claimant made no examination as to the character of the material before mailing his bid, as he might have done. The allowance made appears reasonable and no additional allowance is made therefor.
As to the claim for damage during the period of suspension of the work by the Government under paragraph 2 of the specifications from December 1,1908, to January 15,1909, set forth in findings III and Y, to await the solidification or settlement of the hydraulic fill, it is not shown how much of the time was required therefor, nor is it shown how much of the time was consumed by the controversy between the Government and the Miner Engineering Co., respecting the additional hydraulic fill. But under said paragraph 2 of the specifications the work was to “be carried on from time to time as, in the judgment of the officer in charge, the solidity of the recent hydraulic fill will justify.” Further, it was therein provided that “the contractor will be required to commence delivering material and furnish labor, and to cease both at such times as the officer in charge may direct.”
The claimant having thus contracted to commence, carry on, and suspend the work as the officer in charge may, in his judgment, from time to time direct, the court is not at liberty in the absence of fraud or gross error to change the contract; so, whether the wobk and expense claimed for be treated as coming within the contract or be treated as extra, the claimant is not entitled to recover therefor.
Again, as shown in finding III, after the completion and settlement of the additional hydraulic fill by the Miner Engineering Co., the claimant was requested June 15, 1909, to resume work but did not do so until five weeks later, from which the court, we think, may reasonably infer that the controversy between the Government and the Miner Engineering Co. did not cause the claimant any extra expense or work.
As to the claim for increase in the market price of material during the period of suspension and the return of certain sewer pipe by the claimant on his own motion, as shown in *198 said finding IV, the findings are against the claimant’s right of recovery; and in so far as the claims are based on the suspension of the work-there can be no recovery, as that matter rested within the judgment of the officer in charge and no bad faith is shown.
The further claim for extra labor and materials, on the ground that at the time claimant was requested to resume work the hydraulic fill had not sufficiently hardened, thereby necessitating additional labor and material, as set forth in finding VII, can not be sustained, as under said paragraph 2 of the specifications the matter in the absence of bad faith had been committed by the contract to the officer in charge.
The last claim is a novel one and grows out of the claimant’s want of experience in the class of work he proposed to do; that is to say, having no experience in this line of work he relied upon an engineer of his own selection to advise him as to the basis of making his proposal and the engineer misled him both as to the cost of the materials and of labor, by reason of which he made his bid so low that he suffered a loss. When the claimant discovered that he had been misled he sought to be relieved from the performance of the contract, but the officers of the Government required him to proceed, which he did, and thereby sustained a loss of $5,084.44. We are aware of no rule of law which would render the Government liable under such circumstances, and we may add that the matter is not discussed by the claimant in his brief. It results that the petition must be dismissed, which is accordingly ordered.