PERCIVAL H. REESE
and
ELAINE REESE,
Plaintiffs
v.
GOVERNMENT OF THE VIRGIN ISLANDS,
DANIEL AMBROSE, Commissioner of Property and Procurement,
and
HENRY DE LAGARDE, Director of V. I. Land Division,
Defendants

Civil No. 16-1959

District Court of the Virgin Islands

Div. of St. Thomas and St. John
at Charlotte Amalie

July 27, 1959

*See, also, 174 F. Supp. 561*

BIRCH and MADURO, Charlotte Amalie, St. Thomas, Virgin Islands (JOHN L. MADURO, Esq., of counsel), *for plaintiffs*

LEON P. MILLER, ESQ., United States Attorney, Charlotte Amalie, St. Thomas, Virgin Islands, *for defendants*

HASTIE, *Circuit Judge*

This action for the specific performance of an agreement for the sale of public homestead land is brought by Percival H. Reese and his wife, Elaine Reese, residents of St. Thomas, against the Government of the Virgin Islands and two officers of the Government who are concerned with the disposition of homestead land.

On the evidence the Court finds the facts upon which this claim depends to be as follows:

### FINDINGS OF FACT

1. Several years ago, under the public homestead program of the Municipality of St. Thomas and St. John Percival H. Reese, who is a war veteran, and his wife purchased homestead Plot No. 265, Estate Hospital Ground, from the Government.

2. In 1956 or 1957 persons who are not parties to this suit urged Percival Reese to sell Plot No. 265. He was unwilling to do so. However, he was persuaded that the community would benefit by the acceptance of the offer to buy because it was made by a prospective benefactor to the community. There was the additional fact that Reese had paid $109. for Plot No. 265, and the offer submitted to him, and ultimately accepted was for $4000.

3. At a meeting of the Advisory Board of the Virgin Islands Land Authority, Reese discussed with the Board and with the Director of the Land Division the prospective sale of Plot 265, his reluctance to part with it, and his unwillingness to sell unless he could be assured that he would be permitted to purchase an-

other public homestead plot. On this occasion the Board informally advised Reese that no homestead land was presently available but that if he sold his plot as proposed, another plot would be made available to him later when the Round Hill section was ready for homesteading. In addition, the Board and the Director assisted Reese in accomplishing the sale of Plot No. 265 by helping him to obtain the waiver of repurchase rights which the Government still held on that plot. Later, in a letter dated May 1, 1957 the Director of the Land Division advised Reese that the Board had agreed to afford him "a priority in allocation" when the Round Hill site should be homesteaded.

4. Subsequently the Round Hill area was opened for homesteading. Applications for homesteads, duly submitted by persons who were living in the Round Hill area or renting land there greatly exceeded the number of available homestead plots. However, the Board and the Director accorded the Reese application priority status and acted favorably upon it, leaving unsatisfied numerous applications and claims of persons residing in the area or renting land there.

5. On July 2, 1958, the plaintiffs and "Henry W. de Lagarde, Director", acting in the name of the "Government of the Virgin Islands, Virgin Islands Land Authority" formalized the priority allocation to plaintiffs by executing an "Agreement for the Sale and Purchase of Land" under which it was agreed on behalf of the Government to sell to the plaintiff for $638.50 Plot No. 335, Estate Hospital Ground. Plaintiff then paid the Government of the Virgin Islands $683.50 in accordance with this contract.

6. The transaction was then submitted to the Commissioner of Property and Procurement and to the Governor of the Virgin Islands for approval before a deed should be executed. Following this submission to higher authority the Governor, Honorable John D. Merwin, wrote on January 20, 1959 to Mr. Reese stating, among other things, "I must decline to approve a deed to you to Lot 335, Estate Hospital Ground, St. Thomas, Virgin Islands. You are, of course, entitled to refund of any sums paid on account of the purported purchase of the lot in question." This suit followed.

## DISCUSSION

■ There is one insuperable obstacle to the enforcement of the agreement of sale as made between plaintiffs and

60

the homestead authorities. The Virgin Islands Code in clear and unambiguous language sets up a precise order of priorities to be followed in the allocation of homesteads to applicants. Section 4 of Title 21, Virgin Islands Code, reads as follows:

"The priority of purchasers of land for homesteads shall be as follows:

"(1) Persons currently owning and living in superficiary buildings on the land or leasing land in the area acquired by the Government upon which no buildings have been erected, shall be given first priority;

"(2) Persons living in rented houses located in the area acquired by the Government shall be given second priority;

"(3) Virgin Islands war veterans, who otherwise qualify under this chapter, shall be given third priority; and

"(4) All other applications for the purchase of lots shall be considered in accordance with the priority established by date of application."

■ In the case of the Round Hill tract there were many more than enough applicants entitled to first and second priorities under the above quoted statute to take all of the land. Yet the Land Authority has attempted to give Reese, admittedly a third priority applicant, a homestead leaving unsatisfied others whom the legislature has placed ahead of him.

It matters not that Reese sold his former homestead and relied upon the promise of officials to make another available to him, or that these officials believed in good faith that it would be fair and proper to provide him with another homestead. Neither the Land Authority nor this Court has the right to change or disregard the order of priorities for homestead acquisition which the legislature has seen fit to enact into law.

It has been argued that public interest and public policy will be served by the allocation of a Round Hill homestead to Reese. But this Court cannot even consider that question as the law now stands. If it is desirable that the law

be more flexible and that some administrative agency have power in exceptional cases to vary the prescribed order of homestead priorities, then the legislature must say so. The presently established scheme of priorities provides for no exceptions and confers no administrative discretion to vary the order of priority.

 Counsel have ably briefed and argued the additional question whether the Land Authority or the Commissioner of Property and Procurement is the proper representative of the municipality in contracting for the sale of homestead land. This question arises because the legislature enacted conflicting statutes within a period of less than one month, with no mention of the earlier statute in the discussion or enactment of the subsequent one. With section 1 of the Act No. 178 of June 5, 1957, Title 21 V.I.C. § 7a, contrast section 62 of Act No. 160 of May 16, 1957, Title 21 V.I.C. § 7. It is noteworthy that the May 16th enactment was part of the entire Code adopted at that time, so that the legislature may have acted on June 5th without adverting to the fact that it had so recently covered the same subject in the new Code.

The matter at least deserves mention here since the legislature may well wish the situation brought to its attention for such further consideration and action as will make the legislative will entirely clear. But this question is not essential to the disposition of the present case, because under section 4 of Title 21 a contract of sale to Reese, a third priority purchaser, while first and second priority applicants remain without homestead is illegal, whether executed by the Land Authority or by the Commissioner of Property and Procurement.

For the foregoing reasons judgment will be entered denying plaintiffs relief.