**PERCIVAL H. REESE and ELAINE REESE,**
Appellants
v.
**GOVERNMENT OF THE VIRGIN ISLANDS,
DANIEL AMBROSE,**
Commissioner of Property and Procurement,
and
**HENRY DE LAGARDE,**
Director of the Virgin Islands Land Division

## No. 13,014
## United States Court of Appeals
### Third Circuit
## Argued January 26, 1960
## Decided April 14, 1960
*See, also, 277 F.2d 329*

JOHN L. MADURO, ESQ., Charlotte Amalie, St. Thomas, Virgin Islands, *for appellants*

LEON P. MILLER, ESQ., United States Attorney, Charlotte Amalie, St. Thomas, Virgin Islands, *for appellee*

Before MARIS, FORMAN, and ALDRICH, *Circuit Judges*

MARIS, *Circuit Judge*

The plaintiffs, Percival H. Reese and his wife, Elaine Reese, appeal from a judgment entered in the District Court of the Virgin Islands denying them specific performance of an agreement for the sale of public homestead land and directing the Government of the Virgin Islands to return to plaintiffs the sum of $683.50 which they had paid as the purchase price of the homestead plot. The pertinent facts out of which this controversy arises are as follows:

During 1955 the plaintiffs purchased homestead Plot No. 265, Estate Hospital Ground, from the Government for $189 under the public homestead program of the Municipality of St. Thomas and St. John. In 1956 or 1957

the plaintiff Percival H. Reese was approached on behalf of a prospective benefactor of the community with the proposition that Reese sell this plot, which he was unwilling to do unless assured that another public homestead plot would be sold to him. Mr. Reese sold the plot for $4000 after he was advised by letter dated May 1, 1957, from Henry W. de Lagarde, Director of the Virgin Islands Land Division, Department of Insular Affairs, that the "Land Division (Authority) Board" had "acted favorably on the Round Hill site so that he (Reese) be afforded a priority in allocation at such time as the land became available." When the Round Hill area was opened for homesteading, Mr. Reese's application was given priority status. On July 2, 1958, an instrument entitled "Agreement for the sale and purchase of land" was executed by Mr. de Lagarde for the "Virgin Islands Land Authority (Virgin Islands Land Division)" on behalf of the Government and by the plaintiffs for Lot No. 335, Estate Hospital Ground, St. Thomas, for $683.50, which sum was paid by the plaintiffs. The transaction was then submitted to the Commissioner of Property and Procurement and to the Governor of the Virgin Islands for approval before a deed should be executed. Following this submission to higher authority, Governor John D. Merwin, under date of January 20, 1959, informed Mr. Reese that he declined, under the circumstances, to approve a deed.[1]

[1]The Governor's letter was as follows:

"January 20, 1959

"Honorable Percival H. Reese
Charlotte Amalie
St. Thomas, Virgin Islands

Dear Senator Reese:

"For quite some time, I have been carefully and exhaustively examining the complete record in relation to your enquiry regarding a deed to property in the Hospital Ground Homestead Project.

"This examination, perforce, has included consideration of the motive and objectives of the homestead program in its entirety, which I find to be commendable and worthy. Consistently, throughout this program, the overriding point has been to enable residents to acquire parcels of land on

The plaintiffs thereupon instituted the present action against the Government of the Virgin Islands, Daniel Ambrose, Commissioner of Property and Procurement, and Henry de Lagarde, Director of the Virgin Islands Land Division, seeking an order directing the defendants to execute a deed conveying Lot No. 335 to the plaintiffs in accordance with the terms and provisions of the contract of July 2, 1958. After a trial the district court concluded that the Land Authority had attempted to give Reese a priority for which he did not qualify and one which was not permitted by section 4 of Title 21, V.I.C.,

which to build houses, who otherwise could never meet the high cost of homesites obtained from private sources.

"The administration of this program in many instances, over the years, may have left many things to be desired. Even though this may be true, I have an obligation to see that its major objectives are achieved, an obligation I cannot shirk or evade, when conscience dictates decisions which may not be entirely agreeable.

"In the instant matter, it appears that you were originally deeded Lot No. 265, Estate Hospital Ground, containing 0.94 acres, more or less, on the Louisenhoj Road for the sum of $189.00 on June 16, 1955. Subsequently, this lot was sold on June 27, 1957 for the sum of $4,000.00, according to the Land Records of the Recorder's Office, or just two years after acquisition, with a net profit of $3,811.00. The file discloses that you sought consideration for the purchase of 'any available plot at any other subdivision under the jurisdiction of the Authority at such time as it is available for distribution'.

"Pursuant to this request, minutes of meetings of an 'Advisory Board' to the Land Division (successor to the Land Authority) indicate that you were 'afforded a priority' in allocation of plots in the Round Hill Section of Hospital Ground, and you were later alotted Lot 335, Round Hill, for the sum of $683.50. The total consideration therefor for these two plots is $872.50 or a profit of $3,127.50 in these transactions with the Government which, I feel, departs from the objective stated above and raises serious moral aspects of the Government's dealings with its people.

"On the basis of the first sale home sites were obtainable from private sources. There are other facets involved in the matter which militate against approval under all of the circumstances. The 'Advisory Board' was in fact advisory only and its action can have no binding effect. Serious question has been raised as to its existence and functioning, by audit reports and other agencies, even though it was supported by letter dated September 15, 1955 from Mr. George W. Hamilton, Administrative Assistant to the Governor. It has since been discontinued entirely.

"For the reasons stated, you are hereby advised that I must decline to approve a deed to you to Lot 335, Estate Hospital Ground, St. Thomas, Virgin Islands. You are, of course, entitled to refund of any sums paid on account of the purported purchase of the lot in question.

Sincerely yours,

/s/ John D. Merwin
John D. Merwin
Governor"

and, hence, the plaintiffs could not be granted the relief they sought. 4 V.I. 58, 174 F. Supp. 561. This appeal followed.

The plaintiffs seek reversal of the judgment of the district court on two grounds: first, they allege there is no evidence to support the court's finding that there were qualified applicants for homesites ahead of them, and, secondly, they say it was error to apply section 4 of Title 21, V.I.C., because the priority provisions of that section were not in effect at the time the priority allocation was granted. The Government, however, contends that the contract which the plaintiffs seek to have specifically enforced is ineffective because it lacks the approval of the Governor.

█ We do not reach the plaintiffs' contention that the court erred in finding that there were many more than enough applicants entitled to priority over the plaintiffs to take all available Round Hill homestead sites for we find no basis in the law for the priority which was sought to be given the plaintiffs by the "Land Division (Authority) Board" as stated in Mr. de Lagarde's letter of May 1, 1957. The plaintiffs assert that the priority thus sought to be given them was supported by a provision of the rules and regulations of the Virgin Islands Land Division, issued January 10, 1957, under the authority of section 3(g) of the Ottley-Richards Land & Home Loan Act of July 7, 1953, which was then in force. Section 3 of the regulations set forth the priorities for allocation of homestead land in substantially the same order as the similar priorities appear in section 4 of Title 21, V.I.C., except that it was further provided: "In cases of extreme emergency the priorities hereto established or established by law may be waived by the Board upon the applicants furnishing satisfactory proof." We are satisfied that the situation in which the plaintiffs found themselves when they volun-

tarily sold their prior homestead plot at a substantial profit, albeit on the promise of officials to make another plot available, could not by any stretch of the imagination be regarded as an "extreme emergency" within the meaning of the regulations. It does not appear that the plaintiffs were entitled to or claimed a priority on any other basis. It necessarily follows that the action of the Land Division Advisory Board, and the letter of Mr. de Lagarde of May 1, 1957, gave them no rights and imposed no duties or obligations on the Government.

The plaintiffs' rights, if any, must accordingly depend upon the validity and enforceability of the agreement for the sale and purchase of the Round Hill plot which was executed on July 2, 1958. At that time the Ottley-Richards Land & Home Loan Act had been superseded by Title 21 of the Virgin Islands Code which became effective September 1, 1957. Pertinent to the question before us are the following provisions of sections 2 and 7 of that title:

"§ 2. Powers and duties of Commissioner [of Property and Procurement]

"(a) In addition to any other powers conferred upon him by this chapter or other law, the Commissioner, with the approval of the Governor, and on behalf of the Government of the Virgin Islands, may —

"(1) pledge, obligate, mortgage or otherwise encumber land, property, revenues, and income acquired or received by the Government pursuant to this chapter;

"(2) for the purposes of this chapter, sell, transfer, lease or otherwise dispose of any property referred to in clause (1) of this subsection;

\* \* \*

"(4) enter into contracts, and formalize and execute all instruments necessary or advisable in the exercise of the powers granted to him or the Government in carrying out the purposes of this chapter;

\* \* \*

"(11) Subject to the provisions of this chapter, appraise and determine the selling price and the installments payable for each separate subdivision allotted under this chapter, basing such selling price in part upon (A) size, (B) topography, (C) accessibility to roads and water, and (D), with respect to the type of homesteads referred to in clause (8) of this subsection, fertility of the land;

"(12) receive applications for homestead lots, and, subject to the provisions of this chapter, determine the eligibility requirements of purchasers under this chapter, and make allotments to such eligible and worthy applicants as he deems best able to make proper use of the land and fulfill the contract obligations incurred, giving due consideration, in selecting applicants, to character and, with respect to the type of homesteads referred to in clause (8) of this subsection, physical ability and industry;

\* \* \*

"§ 7. Homestead contracts; terms

"In the name of the Government of the Virgin Islands, and with the approval of the Governor, the Commissioner of Property and Procurement shall issue contracts for the purchase and sale of homestead plots at the prices determined as provided in this chapter. In addition to providing for the sale price and the terms of payment, each such contract shall stipulate that —

\* \* \*

"(7) upon payment of the purchase price in full, fee simple title shall vest in the purchaser, and there shall be executed and delivered to the purchaser a good and sufficient deed to the land."

■ ■ We note in passing that the agreement for the sale and purchase of the land upon which the plaintiffs rely is signed for the Government by Mr. de Lagarde as Director of the Land Division. Whether he or the Commissioner of Property and Procurement was the proper official of the Government to execute such a contract we need not decide. Quite possibly Mr. de Lagarde might have performed this function by direction and as deputy of the Commissioner. However this may be, we find that the agreement has another defect which renders it wholly invalid as against the Government. This defect is that

the agreement does not have the approval of the Governor. As we have seen, sections 2 and 7 expressly provide that the Commissioner of Property and Procurement may enter into contracts for the sale of homestead plots only "with the approval of the Governor". We have also seen that in this case the Governor has expressly disapproved the agreement.

■ ■ We conclude that this is a fatal defect which renders the agreement invalid and unenforceable against the Government. Monroe v. United States, 1902, 184 U.S. 524, 22 S. Ct. 444, 46 L. Ed. 670; Grammer v. Virgin Islands Corporation, 3 Cir. 1956, 3 V.I. 588, 235 F.2d 27. Moreover, the plaintiffs cannot have the benefit of the doctrine of estoppel in a case of this kind. Spencer v. Railroad Retirement Board, 3 Cir. 1948, 166 F.2d 342; Securities and Exch. Com'n v. Morgan, Lewis & Bockius, 3 Cir. 1953, 209 F.2d 44, 49. The principle stated by Judge Lindley in Wildermuth v. United States, 7 Cir. 1952, 195 F.2d 18, 24, is applicable here:

". . . It is axiomatic that contracts with the government must be in strict conformity with the authority conferred before they are enforceable. Federal Crop Ins. Corp. v. Merrill, 1947, 332 U.S. 380, 384, 68 S. Ct. 1, 92 L. Ed. 10; Hawkins v. United States, 1877, 6 Otto 689, 96 U.S. 689, 24 L. Ed. 607; In re Floyd Acceptances, 1868, 7 Wall. 666, 74 U.S. 666, 19 L. Ed. 169; Mechem on Agency, Sec. 763 (2nd Ed.). Nor will the doctrine of estoppel work for the benefit of plaintiffs in their suit against the government. Utah Power & Light Co. v. United States, 1917, 243 U.S. 389, 409, 37 S. Ct. 387, 61 L. Ed. 791."

Accordingly, it is unnecessary for us to consider the question of legal priorities under the law.

The judgment of the district court will be affirmed.