UNITED STATES of America, Plaintiff,

v.

45.28 ACRES OF LAND, MORE OR LESS, SITUATED IN THE TOWN OF TRURO AND WELLFLEET, County of Barnstable, Commonwealth of Massachusetts, and Robert W. Carver et al., Defendants.

Civ. A. No. 74–77–C.

United States District Court,
D. Massachusetts.

Dec. 28, 1979.

Edward F. Harrington, U.S. Atty., Kenneth P. Nasif, Robert Mulligan, Asst. U.S. Attys., Boston, Mass., for plaintiff.

Joseph T. Doyle, Condon, O'Callaghan & Doyle, Boston, Mass., for Robert W. and Eugenia O. Carver.

## MEMORANDUM

CAFFREY, Chief Judge.

This matter came before the court on defendant's Motion for Pretrial Ruling. The defendant Carver argues in support of his motion that as a result of (1) the enactment of the Cape Cod National Seashore Act on August 7, 1961, 16 U.S.C.A. §§ 459b–459b–8, (2) the adoption by the Town of Truro, on June 11, 1963 of certain amendments to its By-laws as adopted on February 17, 1963, and (3) the declaration of an employee of the National Park Service, United States Department of Interior, he was unable to construct single family dwellings on a certain parcel of land measuring approximately 5.88 acres located in Truro, Massachusetts.

Defendant relies on the existence of a certain subdivision plan approved by the Town of Truro in 1958 and subsequently revised with the approval of the Town of Truro in 1965. The subdivision plan contained a lay-out of seventeen lots [1] on parcels of various sizes and shapes all contained in the 5.88 acres which is the subject of this memorandum. On January 8, 1974, a complaint in condemnation was filed in the District Court for the District of Massachusetts.

The defendant does not challenge the authority of the Secretary of Interior to acquire the defendant's land through condemnation, but rather the basis on which the 5.88 acres was appraised. The Government's independent appraiser appraised the value of property as two lots on July 2, 1972 in accordance with the three acre zoning requirements of the Town of Truro.

It is plaintiff's contention that the defendant's subdivision plan is no longer viable since he failed to perfect his plan within the statutory seven-year period from the date of approval as required by Massachusetts law. Mass.Gen.Laws ch. 40A § 7A.

No one contends that the subdivision plan in question was still in effect when the government filed its complaint in condemnation. The defendant however maintains that the federal government prevented him from implementing the subdivision plan while it was viable and that it should therefore be required to appraise the land on the basis of the 17 lot subdivision plan.

## STATUS OF DEFENDANT'S LAND UNDER THE ACT

Defendant's first contention is that he was unable to construct single family dwellings on his land because of the enactment of the Cape Cod National Seashore Act (hereinafter the Act). Under the terms of the Act the Secretary was empowered by Congress to acquire land within the geo-

---

1. The original subdivision plan was for 21 lots.

graphical boundaries of the Seashore in order to further the purposes of the Act. Although improved property would be exempted from the Secretary's taking power provided that certain conditions were met, *all unimproved property was subject to that taking power.* Since the defendant's land was *unimproved* within the meaning of the Act [2] the Secretary could acquire it by condemnation if he was of the opinion that such action was necessary but he was not *required* to do so, 16 U.S.C.A. § 459b–1(a).

I rule that the defendant is incorrect in arguing that the Secretary would be required to take his land if it was developed. However, if the defendant had decided to develop the land while the subdivision plan was in effect and the Secretary *had decided* to acquire it, defendant would have been entitled to recover the fair market value of the land in light of the viable subdivision lot plan. After the subdivision lot plan expired defendant could only recover the fair market value based on the ¾ acre zoning provision.[3]

### THE 1963 TRURO ZONING PROVISION

■ Defendant next contends that he was unable to construct single family dwelling on his land in accordance with his subdivision lot plan because the Town of Truro passed a new zoning by-law at the instigation of federal officials in 1963. However with reference to subdivision plans on record prior to 1961, the 1961 amendment to Chapter 40A, Section 7A reads:

> "Nothing in this act contained shall extinguish, limit or abridge the rights of any person with respect to land shown on any plan submitted to, or approved or endorsed by, any planning board prior to the effective date of this act to use such land as permitted under Section seven/A of chapter forty/A of the General Laws as in effect immediately prior to said

effective date." 1961 Mass.Acts Chap. 435, Sec. 3.

Thus the new zoning by-law had no effect on the validity of defendant's subdivision lot plan.

### REPRESENTATIONS MADE TO DEFENDANT BY THE NATIONAL PARK SERVICE SUPERINTENDENT

In July 1964, while the subdivision lot plan was still in effect defendant wrote to the Cape Cod National Seashore Park requesting permission to build a cottage on property in the subdivision. This request for permission to build was answered by the Superintendent of the Cape Cod National Seashore Park on July 17, 1964. In his letter of July 31, 1964 the superintendent stated:

> The Act of August 7, 1961 authorizing the establishment of the Cape Cod National Seashore included a cut-off date for constructing housekeeping residences or cottages. This date, September 1, 1959, the date on which the Bill was submitted to Congress makes it impossible for us to grant you permission to construct an additional duplex housekeeping cottage.

Despite this announcement of the Superintendent of the Cape Cod National Seashore Park, defendant proceeded to apply and obtain a building permit on September 19, 1964 from the Town of Truro. On October 20th the same Superintendent wrote to Mr. Carver informing him that he had been notified by the Town Planning Board that a permit had been issued to him for the construction of a one family dwelling on the subject property. In this letter the Superintendent stated that the law establishing the Cape Cod National Seashore Park "prohibits further development of man-made structures in the way of buildings, etc., on land within the Seashore boundaries." This

---

**2.** Section 459b–3(d) defines improved property as "a detached one-family dwelling the construction of which was begun before September 1, 1959 . . ."

**3.** By order of this court dated September 27, 1979 the 3 acre zoning provision adopted by the Town of Truro in 1963 is *not to be con-*

sidered to determine the fair market value of land within the Truro-Seashore in condemnation proceedings brought by the United States. Such land is to be appraised on the basis of the ¾ acre zoning provision in effect in those portions of Truro which are not within the Seashore.

statement by the Superintendent was a misstatement of the law.

It is plaintiff's contention that at no time did the National Park Service employee state that the defendant's construction plan would be illegal nor does the Cape Cod National Seashore Act imply illegality for such action. The plaintiff maintains that the National Park Service employee gave notice to the defendant that the National Park Service had received information from the Town of Truro as to defendant's building permit and that the defendant should be aware of the Act's intended purpose to preserve and prohibit further development within the Cape Cod Seashore area. Plaintiff further argues that if the defendant relied upon the declarations by the National Park Service employee as restrictions upon the use of his property, such reliance was unjustified and unreasonable under the law of the land because the United States cannot be held accountable for a mistaken declaration of law made by one of its employees.

It is well settled that the doctrine that a principal may be bound by the acts of his agent acting in violation of specific instructions, yet within the scope of his general authority is not applicable to the acts of an officer of the Federal Government, the reason being that it is better for an individual to suffer from mistakes of such officers than to adopt a rule which by collusion or otherwise might result to the detriment of the public. "Individuals, as well as courts, must take notice of the extent of the authority of officers of the Federal Government." *Whiteside v. United States*, 93 U.S. 247, 23 L.Ed. 882 (1876), *Hawkins v. United States*, 96 U.S. 689, 24 L.Ed. 607 (1877). The defendant therefore cannot now claim that his plans were frustrated by the opinion of a park service employee. Furthermore if defendant was aggrieved by the Cape Cod National Seashore Act, in 1961 the amended by-laws of the Town of Truro, in 1963 and the opinion of a Park Service employee in 1964 to the extent that he could not enjoy the incidents of ownership as he alleges, his remedy may

very well have been under the Tucker Act (28 U.S.C. Section 1346) as a taking in inverse condemnation.

Order accordingly.